This is number 05-1462 G3 Genuine Guide Gear v. Black Diamond Equipment. Mr. Michael John, I just want to confirm before we begin, you've reserved five minutes for your rebuttal, correct? That's correct, Your Honor. You may begin when you're ready. May it please the Court, the District Court erred in concluding that a patent infringement action, that cause of action was released by a settlement agreement when the patent that was the subject of that patent infringement action didn't even exist at the time of the settlement agreement. Suppose it did. Suppose the patent had issued, would you lose? I think under this particular release, we wouldn't. I think in the Augustine case, the patents, in fact, were issued at the time of the release and it was held by the Court here that those claims were released. And so what's the language difference here that would prevent them from being released? In the Augustine case, they had very broad language concerning related to, that is, acts that were related to the acts that were taking place prior to the settlement agreement. And of course, the acts that were taking place prior to the settlement agreement was the sale of these confection blankets and the identical acts were taking place in the future. So the Court spent a lot of time with respect to that relating to language at page 1371. The Court spent about half, almost half a page on that particular language. We don't have that relating to language with respect to this particular release. There are two separate and independent reasons for the- The cause, matter, or thing whatsoever existing up to the date hereof. That's correct, Your Honor. And that, I guess one of the big issues in this case is what does that existing up to the date hereof modify? And I think there's only two possibilities. It either modifies the cause of action, in which case we would win because there was no cause of action or claim existing as of the time of the settlement agreement, or it modifies the language for or by reason of any cause, matter, or thing whatsoever. But I submit, Your Honor, even if it modifies that, we win too. Because if you think about it, what that language means is there's a release of all claims for or by reason of any cause, matter, or thing whatsoever existing up to the date of the settlement agreement. So basically, what that means is any acts by Black Diamond in this case existing up to the date of the settlement agreement, that is the sales of the products at question, were released as of the date of the settlement agreement. So suppose we put it in the hypothetical that we take the second interpretation, that is the one that your opponent takes of that language that we were just discussing, and the patented issue. Would you agree that under that hypothetical you'd lose? No, Your Honor. I think that even in that situation, we don't have the broad language about relating to the acts that were taking place at the time of the settlement agreement. But of course, in this case, Your Honor, the patent didn't issue at the time of the settlement agreement. And in fact, unlike the Augustine case, where you had a first litigation directed to convection blankets, in this particular case, there was no product at issue in the first litigation, and there was a product at issue in the second litigation. Fairness dictated in Augustine, I think, that the party, that Augustine not be able to preclude totally progressive from selling those blankets. The first litigation, after all, was just simply an effort by Augustine to put a minor impediment to the marketing of those convection blankets. It was a false advertising cause of action. After that was settled, Augustine tried to stop the sale of those convection blankets totally. So to let that cause of action go forward would be totally unfair. Yeah, but there's some indication here, too, that there was a controversy about infringement of this device. Yes, Your Honor, that's disputed, and I think we would probably get to that if the language in the contract, in the settlement agreement, was ambiguous, if you get to that kind of extrinsic evidence. But I think both parties agree. Well, it's not exactly extrinsic. I mean, the complaint here talks about there being such a controversy, doesn't it? I mean, the complaint that led to the settlement. Well, that was the complaint with respect to the first cause of action, Your Honor. It talks about one of the paragraphs in that complaint says that the person from G3 called the person at Black Diamond and said, hey, I own the patent, and you're infringing. There was no product mention. It just said you're infringing. That's in dispute. I mean, it's in the complaint. That's not in dispute. But the fact of whether that happened or not is in dispute. But anyway, I don't think either party contends that the language of the agreement is ambiguous. I think we're stuck with the four corners of the agreement. I'm sorry. Go ahead. Were both parties aware of the 855 application? They were, Your Honor. It was mentioned in the first complaint for the first litigation. It was a published application, and there's plenty of evidence in the record that supports the view that both knew about it. It was published, and everything about the file history was available to Black Diamond just as it was available to us. I'm not sure that's relevant, though, Your Honor. Was a notice of issuance sent before the date of the agreement? Notice of allowance? Notice of allowance. Yes, the notice of allowance was sent before the release. So you had that on hand? Pardon me, Your Honor? You had that in hand before the agreement was executed? That's correct, Your Honor. And that's what Black Diamond is saying is the important right line situation where a claim is released or not. And our position, of course, is a patent infringement claim can only be released when the patent issues. But you've got a problem there because there's a case that neither of you bothers to cite which holds that a release covers a claim that hadn't issued. And that's the press case that was cited, the press machinery case. Are you familiar with the press machinery case? I'm not, Your Honor. I am familiar that future claims can be released. This is a claim under a patent which had not issued, was nonetheless held to have been released in that case. I think patent claims that haven't issued yet can be released under certain circumstances. For example, it's common in patent infringement litigation that if a party is suing another party for patent infringement, that that same party has a continuation application pending at the same time as the litigation to sort of change the claims a little bit in case the other party changes their device a little bit. So frequently, there's some pending applications that haven't been issued yet. And of course, when you release, when you settle the claim, you want to get a release from that cause of action if it happens to issue in the future. But there, absolutely, the burden is on the party who wants the benefit of that release to identify that claim and get a covenant not to sue with respect to that patent. But that wasn't true in press machinery. In press machinery, the claim was held released even though there was no specific mention of this pending patent. It was covered by a general release in that case. The press machinery, the reason I found it, is it's discussed in Augustine at some length. And it deals with the situation which we have here where there's a general release and a patent that hadn't issued. And nonetheless, the court held that the general release covered it. I don't think we just can characterize these releases as general or specific and act as if all releases are the same if they're general or all releases are the same if they're specific. I think you have to look at the individual release that's the subject of the cause of action. And here it's very clear. I'm sorry. Mr. Michael, excuse me, I jumped in on you because you're down to about six and a half minutes and I wanted to ask this question. But I picked up on it because you mentioned by reason of the terms of the release. I mean the release says, and we're talking about clause nine here, it's talking about any claim that either of the parties may have by reason of anything, all right, a thing existing at that time would be the application and that had been allowed up to the date hereof. So it releases any claim that exists by reason of anything you have at that time. That would be craziness, Your Honor. I mean we have matches, we have our building, and we have animosity between our clients. That doesn't mean that if their client were to torture our building, it would be released. I mean this foreseeability... Well, no, but you, yeah, no, I understand, but you read it in the context of the agreement, what we're talking about here. I mean it's obviously speaking about patent litigation. I mean at that time you had in your hand the application and in fact the notice of allowance had issued. So certainly why is that not a claim that you may have by reason of something that existed at that time? We had other patents too, Your Honor, patent applications in existence at the time. And many of them didn't have a notice of allowance, but why the notice of allowance should be magic is beyond me. We had certainly applications that were filed. We had draft applications that are in the process of being written. We had concepts of ideas for inventions. I don't think all of those things are released simply because that we had them at the time of the settlement. Well, I think the contention here is that the language that John Shaw read you covers this here because the device that's in contention now existed at the time the release was executed. That's correct, Your Honor. It was. But that doesn't mean that a cause of action for patent infringement on another patent that didn't exist is released just because the device existed. I think one of the big fallacies of their theory is that the notice of allowance is something that didn't exist. But if the release had said, we release any claims that are made with respect to this device. Oh, that would be totally different. That would release these claims? Well, if it said any existing claim with respect to this device, then any patents that were in existence at the time of the release would be released. If it said any claim either now or in the future that might exist with respect to this device, that would release, in this particular case, would release us. That existing at the time of the release, that language has to modify something. It either modifies the cause of action, in which case we win because there was no cause of action existing at the time, or it's got to modify the cause, matter, or thing. And if it modifies that, that means that the cause, matter, or thing, the sales of the device at issue, up until the time of the settlement agreement, are released, but not future. It doesn't talk about future sales of that product. It's got to... The existing at the time of the settlement agreement has to modify something. All right, Mr. McDonough, you're into your rebuttal time. You have about 2 minutes and 37 seconds, but we'll restore your full rebuttal because you had various questions. Mr. Binney? Would it be permissible to move the easel up a little bit closer? Oh, that's fine, yeah, certainly. Does Mr. Mickeljohn know what's on the easel or what we have here? I did send to Mr. Mickeljohn... Mickeljohn, I'm sorry. I apologize for mispronouncing your name. I did send the... on 8 1⁄2 by 11 pieces of paper the same things that I'm going to use here 21 days in advance as per the local rule on that. So you have no objection to this material, Mr. Mickeljohn? No. Okay. Might as well pull out the... language of issue, Your Honor. I think... I think the court's questions are... If you'd expect us to read that small print, you got... you're dreaming. I apologize. Hopefully, maybe you can read the top part, which is mostly what I'll be... mostly what I'll be talking about, but I wanted to be sure that... the court had everything... just to be sure that I wasn't... For context. Out of context. Let me just get... Let me just use this. If it pleases the court, I should also introduce Mr. Luskin, who is the outside general counsel for Black Diamond, who is sitting at counsel table with me. Obviously, I think the discussion can be centered pretty quickly. Decision is, I think, fairly fundamental. Does this language... release Black Diamond from the patent action that was brought by G3? We think it does, and we think that G3 makes some fundamental errors in how it interprets that language. What do you say the word thing refers to? What is that referring to? Is that referring to... Does thing refer to a device being produced by Black Diamond, or does thing refer to perhaps the pending application that matured into the 755 patent? What does thing refer to? I think thing... can refer to a device. It can refer to the allowed claims. I think you need to... In applying this language, you have to put the language on top of the facts as they existed at the time. Well, what do you think it refers to? I think it refers... refers to the combination of the allowed claims and the device that was on the market at the time. The device that was on the market at the time was this one. I brought it along. There's the rivet that's covered by the 234 patent, and this is the tail clip that's alleged to be covered by the 855 patent. For the record, Mr. Binney's referring to the blue and white item. Yes. These are climbing skins that go on the bottom of your cross-country skis. I also brought along the G3 device, which has the very similar rivet and somewhat different clip. Which is, for the record, the red item. Correct. So I believe, and maybe the quickest way is to go to the court's language in Augustine. Is it Augustine or Augustine? I wasn't quite sure. Probably doesn't matter. The key language... Are you familiar with the press machinery case? I am from reading Augustine. It is cited in your brief. And having heard the court's question, I'm very sorry I didn't cite it. It seemed like the Augustine case was directly on point here. Well, because in press machinery, as noted in the Augustine case, the agreement perspective language might have is just the same as in a settlement agreement. I agree. In fact, what I would say in response... It's almost on all four points, but it wasn't even brought up or cited, even though it was noticed in the Augustine case. And for that, my apologies, Your Honor. I would be happy to supplement the briefing if the court thinks that that would be helpful. No, I think we have the case. But going back to your question about what a thing is in this, I think if you take that language in combination with the language from Augustine, saying that no exception to this rule should be implied for a claim whose facts were well enough known for the maker of the release to frame a general description of it and request an explicit reservation, that that is where the existence of allowed claims, which define the claim, and an actual object or thing that is on sale at the time of the release combined to satisfy the Augustine requirements and commit the release under this language. But you were aware of the application. You were aware of the notice of allowance. So why didn't Black Diamond put that in the agreement? Okay, good question. The first answer is yes, we're aware of the application. There is no evidence in the record that Black Diamond was aware of the notice of allowance. There is also no evidence in the record that Black Diamond had the slightest idea that G3 thought that Black Diamond's clip infringed the patent that essentially covered this clip. That was not raised either. Referring first to the blue item, then the red item. I think, though, the better answer, frankly, is that even if Black Diamond did know all about it, Black Diamond had this language. That, in Black Diamond's case, means that Black Diamond felt secure enough in the broad language of this release that it didn't have to worry about whether or not G3 would be misguided enough to think Black Diamond infringed these allowed claims. But not clear enough to avoid another litigation. As I said, if you come back to what actually happened, Black Diamond did not know about the notice of allowance on this application. You'll note we put into the record the declaration of Mr. Harold Aliff, who is the inventor on both patents, whose declaration in support of the co-pending motion for a summary judgment on non-infringement. I offer it not so that you come to any conclusions about whether infringement happened, but it gives you some insight as to how far from Black Diamond's radar screening it was that their clip would be accused of infringing this patent. Well, but we've got a situation, wouldn't you agree, in which both parties were negligent in not writing a clearer release? And the question, it seems to me, is who's going to bear the burden of the lack of clarity? Well, I think the court answered... It's a badly drafted release, isn't it? I could certainly find ways to improve it, given what the parties knew. Having said that, it is well-drafted in terms of it being extraordinarily broad. When you have in it... Yeah, but what do you expect the parties, when they know of a pending application, to deal with it one way or the other, if there's a controversy between them? That if is... That's an important if, Your Honor. Black Diamond had no idea there was a controversy about the other application. That hurts you. Does it? I think it hurts G3 more, does it not? I mean, they're the ones who know, who have those claims and are thinking about bringing a lawsuit as soon as the patent issues, whereas Black Diamond doesn't see that coming. Well, the question is... The general rule with respect to general releases is they don't cover claims that don't exist. That's the general rule. And you're asking for an exception to that. You're saying that where the device existed and where the patent was pending and, in fact, had been allowed, there was a controversy with respect to that, we should read the general releases resolving that controversy. The more you say that there wasn't any controversy in mind, the less likely, it seems to me, that the general release should be read not to apply. Hmm. I'm afraid I have to disagree with that. For one thing, the release is drafted to cover all actions, absolute or contingent, known or unknown, which the parties had, have, or here and after can, shall, or may have. So it's future-oriented and it covers claims, including claims that the parties don't know about, as long as those claims arise by reason of any cause, matter, or thing whatsoever existing up to the date of the agreement. So you're... And, again, you're saying thing there is a combination of... Correct me if I'm wrong, Mr. Vinnie, but I thought you said thing is a... Matter or thing would maybe be a combination of the pending application plus the device that was in existence at that time, your client's device. That's correct, because those things together would permit the general description of the claim if G3 wanted to withhold it from the terms of the release. Those two things together give G3... allow G3 to define the claim sufficient to say to Black Diamond, we want to hold this one back and not include it in the release. And the fact is... Unless we read the release as covering it, if nobody was thinking about a controversy under this patent application that hadn't issued yet. I have no idea whether G3 was thinking about it. But if you weren't thinking about it and you weren't worried about it, why should we give you the benefit of coverage under the release? The general releases are not supposed to cover controversies that people haven't thought about. I'm not sure that's true, your honor. I mean, if... if I have a claim against you and you don't know I have it and I give you a general release, doesn't that cover the claim I have against you? It would depend on the terms of the release. I mean, if it was a release this broad... We're dealing here with an unusual situation. We're dealing with a claim which didn't exist. You agree with that, right? There wasn't any claim. I believe that there is a contingent claim. The contingency is whether the claim that's allowed make it all the way through to be an issued patent. There wasn't any existing claim at this time. There was not an existing actionable claim. Okay, so the question has to be, under the general release cases, was this a controversy that was in the contemplation of the parties? Because general releases don't generally cover future controversies that the parties haven't thought about, right? Well, plainly, the parties have thought about patent infringement controversies. Plainly, the parties have thought about controversies involving a product that was on sale. That G3... I don't know what G3 was thinking, but if Black Diamond wasn't thinking about being sued on a case where it doesn't know even that there's an allowed... that the claims have been allowed, I'm not sure why that should cause... should come to G3's detriment... to Black Diamond's detriment. It seems as though if G3 has in mind making a controversy out of its then-allowed claims that we're going to issue shortly, G3 ought to be the one to bring those claims to Black Diamond's attention and say, we either want to deal with this now in the settlement or we want to reserve it from future litigation. It is very common for companies to take their allowed claims and send them to opposing parties... to potential infringers and say, look, these allowed claims are going to issue in however many months it's going to take. You're going to be infringing. Let's talk license. And G3 had it completely within its power to do that. And it's much more, I think, in terms of who's going to have the burden to bring something up, to bring something to somebody's attention. It's far easier for G3 that knows its claims are allowed to bring it to Black Diamond's attention than it is for Black Diamond to have to... and I'm not 100% sure whether it could do this at the time, but have to go online and check the application and read carefully the allowed claims and decide whether or not in Black Diamond's mind there's even a possibility that there would be an infringement claim. You may have gotten some of the impression Black Diamond thought this was a pretty far-out infringement claim, that these products weren't even close to each other and that the claims didn't read. So it may very well be, at the time, had G3 raised it, Black Diamond might very well have said, we don't think there's a risk there. Not to interrupt you, but you're running out of time, but I wanted to ask you a question regarding the arbitration clause. Yes. The arbitration clause requires any dispute under the agreement to be sent to arbitration. Was arbitration pursued by the parties? Arbitration was not pursued, and in fact it was specifically waived by the parties. As of the time, partly because of the peculiar way in which this arose, the release was asserted essentially as an affirmative defense to a patent infringement case. So the original case did not arise under the agreement. The defense did. And so when Judge Stewart raised the same question you did, the parties briefed it and advised Judge Stewart that they were both waiving the arbitration provision, which I believe, under the law we cited to Judge Stewart, which I'm not sure we included in the record, the parties are always capable of doing. Thank you, Mr. Benny. You finished, Jim? Unless the court has further questions, yes. Okay, thank you. Mr. Michael John, you have your rebuttal. Thank you, Your Honor. You know, the cause of action here was not only not thought about, but it wasn't even in existence. And to respond to your... Yeah, but the question is not whether the particular cause of action was the focus of the parties. Under Press Machinery and under Augustine, it looks as though you can release claims that haven't come into existence yet, or aren't yet existing claims, if the parties are trying to settle a controversy about whether this particular device can be made and sold. And the question here would seem to be, if that's a correct interpretation of those cases, is was there a controversy about whether this device could be made and sold at the time? In Augustine, the court clearly said you had to have possession of a right in order to release a claim. The party has to have possession of a right. And in Augustine, that right was the five issued patents prior to the settlement. Not under Press Machinery. Well, Your Honor, I think we definitely have to brief that case. I assume I read that at the time of this briefing and didn't think it was relevant. And I understand Your Honor thinks it's very relevant. Apparently, Mr. Binney didn't think it was relevant either. But I think it's very important to this appeal, to my client's side of it anyway, if Your Honor is reading it the way Your Honor mentions that we have a chance to brief that case. I think though, Mr. Michael, John Gosch, I mean, we can read the case and, you know, I don't think we need to have further briefing on it. Well, the differences in the cases frequently rely on frequently turn on the world. The only reason I say this, I mean, then we get into a situation wherever a case comes up at oral argument that in a situation like this, it's pre-Augustine. I mean, I think the court, we can read the case and decide it. I think we'd just be going kind of far afield if we got into a situation of further briefing on any case that comes up. Your Honor, responding to your question about the thing, what does that refer to? These releases typically all have four elements to them. The first element is they talk about causes of action, claims, actions, they say it in five, ten different ways. Then it talks about timing, past, present, future, depends upon what the release is. Then it talks about the kinds of stuff that's being released. In this case, it's the cause, matter or thing, and then it puts a limitation on it, perhaps. As in this case, existing up to the date of the settlement agreement. Now, thing can't refer to the cause of action, can't refer to the patent, because the cause of action is what refers to the patent. You're saying thing could only possibly refer to a particular device. In the context, yeah, that's correct, Your Honor. In the context of this case, thing specifically means the sales of the allegedly infringing product up to the date of the settlement agreement. This is the only case I know of. Now, I don't know what press says right now other than what Your Honor said about it, but this is the only case I know of where a claim that's not existing and sales that are not existing at the time of the settlement can be released. That doesn't make any sense at all, because there's nothing magic about the notice of allowance, so every claim that we have for every patent that's in existence, or even in draft form, should be released if we're given the interpretation to this case that Black Diamond suggests. One other point, I think... I think it's too much to ask if there's an existing device and there's a controversy about infringement to say that we're releasing infringement claims under the 234 patent, but not under the applications that are pending. It's not too hard to do that, is it? If we say that, Your Honor, but no So you both wrote a release which wasn't well-drafted. The question is, who's going to suffer from it? But when you want a covenant not to sue, or a license, the party who wants the benefit of that agreement has the duty to get it in there. They're the ones who now say they wanted it. They should put it in there. We're not talking about a license. Augustine seems to say that the burden is on you if it's not included. Yes, we have a burden to reserve if two facts are met. Number one, the right existed. Augustine clearly says the right has to have existed. Number two, the release has to cover it. I don't think in this case, either one of those two elements have been met. The right didn't exist because the patent didn't issue yet. That's the thing that would have told us, and them, that there's a cause of action here that has to be treated, or not. But when the patent didn't issue, it's all amorphous. Secondly, the release, I don't think, covered it even if it did had issue, because it's related to acts that took place up to the date of the settlement agreement. The last point I want to make, Your Honor, is that the settlement agreement itself is limited to the 234 patent and a Canadian patent. That's a point that we haven't spent too much time on, but it's important. The recitals, the last two recitals talk about just the 234 patent and the Canadian patent. They're the two recitals that are not contentions. In paragraph 14 says, the recitals which are not contentions are incorporated by reference and are part of this agreement. And those recitals talk about a dispute about ownership of the 234 patent and the Canadian patent. Mr. Michael John, you're well into your pasture time, and I think actually you have had a little bit more time than Mr. Binney, so I think we'll have to take the case as it is now. Okay, thank you, Your Honor. Thank you. Mr. Michael John, Mr. Binney, the case is submitted.